**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
In Re:                                                                 CASE NO.: **8-16-73939 (REG)**
**Janice Laspina**                                               **Chapter 13**
          **Debtor.**
-----------------------------------------------------------X
**Janice Laspina**
          **Plaintiff,**
    -against-                                             **Adv. Pro No.:**
                                                      **COMPLAINT**
**Selene Finance LP**                                        **WITH JURY DEMAND**

          **Defendant.**
-----------------------------------------------------------X

Plaintiff, Janice Laspina, by and through her counsel, Aronow Law, P.C., as and for her Complaint against Defendant, Selene Finance LP, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Janice Laspina ("Ms. Laspina" or "Plaintiff") is the owner of a home located at 3 Glen Drive, Plainview, New York 11803 (the "Family Home").

2. The Plaintiff, at all times relevant, has maintained and currently maintains her Family Home as her primary residence where she lives with her husband.

3. Defendant, Selene Finance LP, ("Defendant" or "Selene") has been the servicer of her note (the "Note") and her mortgage that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan") as the first and only lien against her Family Home.

4. Selene has been the servicer of her Loan from at least January 10, 2014 until the present.

5. Selene upon information and belief is a Foreign Corporation whose main office is 9990 Richmond Avenue, suite 400, Houston, Texas, 77042, is a Delaware Limited Partnership

registered and authorized to do business in the State of New York and its agent for service of process in New York is CT Corporation System, 111 Eighth Avenue, New York, New York 10011.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* ("RESPA") and The Truth in Lending Act ("TILA") as contained in the Consumer Credit Protection Act as amended 15 U.S.C. §§1601, *et seq.* This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.1, *et seq.* of Regulation X and 12 C.F.R. 1026.1 *et seq.* of Regulation Z.

7. This action is also brought for common law fraud, violation of the covenant of good faith and fair dealing, intentional and negligent infliction of emotional distress and violation of this Honorable Court's Loss Mitigation Order entered September 22, 2016.

8. This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.36 of Regulation X and 12 C.F.R. 1026.

9. This Honorable Court has jurisdiction of this adversarial proceeding pursuant to U.S.C. §§157; 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1409 and 1927. The statutory predicate for this proceeding is 11 U.S.C. § 502 of the Bankruptcy Code and Rules 3001, 3007, 3012, 6009 and 7001 et seq. of the Federal Rules of Bankruptcy Procedure. This action is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(i).

10. This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. §1367.

11. Venue lies in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to the claims in this Complaint occurred in this district and the brunt of the harm will occur in this district if relief is not granted as it is in this district that plaintiff maintains her Family Home, her primary and only home. Moreover, defendant regularly does business within this district occurring within the United States of America and in the State of New York.

## **INTRODUCTION**

12. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

13. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

14. The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. §1024.2(b).

15. Selene is subject to the regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. §617.700.

16. Plaintiff is asserting a claim for relief against Selene for breaches of the specific rules under Regulation X as set forth, *infra*.

17. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorney's fees.

## BACKGROUND

18. In an effort to save her Family Home and avoid homelessness, Ms. Laspina hired Darren Aronow, Esq. to submit a loss mitigation application on her behalf which was first submitted to Selene on November 2, 2016.

19. Selene acknowledged the Loss Mitigation Application within the five (5) day period as required by Regulation X and additional documents were requested and immediately provided.

20. On February 24, 2017, after a bevy of different document requests, the file was deemed by defendant to be a facially complete loan modification application.

21. Contemporaneously, on March 2, 2017, a Notice of Error was sent regarding certain fees and corporate advances based upon a transaction history provided by defendant among other errors which are discussed more fully herein-below. See Plaintiff's **Exhibit "A"**.

22. On March 14, 2017, defendant purportedly sent a denial letter to your affiant's office, however the address indicated on the letter reflects that the letter was sent to an old office address despite the fact that the office had filed a change of address letter with the Court four days prior, on March 10, 2017 docketed under #33. See Plaintiff's **Exhibit "B"**.

23. According to the records found on PACER, defendant's counsel received the "bounce" indicating that the firm address had changed.

24. Whether or not the defendant had sent the denial letter to the proper address is somewhat irrelevant, however, because, despite an obligation to provide a specific reason for the denial, the defendant provided a "cookie-cutter" reason for denial.

25. The March 14, 2017 denial letter states that Ms. Laspina was denied because she had "excessive obligations in relation to…income". See Plaintiff's **Exhibit "C"**.

26. In the absence of quantifiable figures both as to defendant's calculation of Ms. Laspina's debt and as to why the bank incorrectly calculated her income and did not even consider her contributor's income, it is inconceivable how such a reason could be considered a **specific** reason for the denial. Pursuant to 12 C.F.R. §1024.41(d), the servicer must supply a **specific reason** for a denial.

27. Moreover, the defendant also did not provide any information regarding the lender's guidelines with respect to the range for which a borrower's gross household income to debt ratio would be acceptable until Ms. Laspina sent on Notice of Error which was sent to

28. Thus, it is not possible for anyone but the defendant to confirm that the determination in the denial letter was correct, further casting doubt as to defendant's good faith dealing as is required pursuant to this Honorable Court's loss mitigation order.

29. As a result of the vague reasons given in the denial letter, your affiant's office prepared an appeal letter and also took the extra step of sending the Bank a Notice of Error. See Plaintiff's **Exhibit "D" and "E"** respectively.

30. In a letter dated May 11, 2017 which was purportedly a response to Ms. Laspina's

March 2, 2017 NOE[1] is the first time that Selene provided any figures which would explain its denial of plaintiff's loss mitigation application. Plainly, Selene did not consider plaintiff's contributor income at all in its calculations despite having verifiable contributor income which was a part of the application, once again demonstrating Selene's bad faith in handling Ms. Laspina's file since clearly legitimate and verifiable contributor income was willfully excluded from Selene's calculations to facilitate a wrongful denial of plaintiff's loan modification application which would otherwise qualify for the loan modification program but for Selene's actions. See Plaintiff's **Exhibit "F"**.

31.  In the May 11, 2017 response to plaintiff's Notice of Error, Selene claims that no error was made. Yet, it is clear that Selene failed to include the contributor income which was essential to making a good faith calculation of Ms. Laspina's gross household income.

32.  Shockingly, Selene does not even address the contributor income by indicating that perhaps the contributor income could be verified[2] or there was some other basis for ignoring the contributor income.

33.  Moreover, even if Selene's analysis of Ms. Laspina's income were correct, which this office contends it is not, had Selene included the contributor income as it was statutorily required to, the debtor debt to income ratio would fall within the 10%-55% range required to extend Ms. Laspina a loan modification.

34.  The application which Selene wrongfully denied was the first such complete

---

[1] Defendant's letter was dated and sent after the thirty (30) period required to respond to the March 2, 2016 Notice of Error even after accounting for a 15-day extension of time which Selene was required to request in writing prior to the expiry of the thirty (30) day period which it did not, constituting a technical violation of RESPA on top of the substantive error of failing to properly evaluate Plaintiff's loss mitigation application.

[2] It is not possible that Selene could have had difficulty confirming the contributor income considering that the source of funds is based upon pension and social security income which is derived from her parents, who live with Ms. Laspina.

application submitted by Ms. Laspina for a loan modification during the life of the loan.

35. At the time of the filing of this Complaint, Selene has had more than Three Hundred Ninety-Two (392) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which can be located at the following hyperlink: http://www.consumerfinance.gov/complaintdatabase/.

## COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.41(d)

### (Selene's failure to list *actual* reason for denying borrower's 1st loss mitigation application to Selene)

36. The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs in their entirety, as if set forth more fully herein.

37. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

38. 12 C.F.R. § 1024.41(d) provides:

> *Denial of loan modification options.* If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

39. The CFPB Official Commentary to 12 C.F.R. §1024.41(d) provides, in relevant part:

> 4. Reasons listed. A servicer is required to disclose the actual reason or reasons for the denial. If a servicer's systems establish a hierarchy of eligibility criteria and reach the first criterion that causes a denial but do not evaluate the borrower based on additional criteria, a servicer complies with the rule by providing only the reason or reasons with respect to which the borrower was actually evaluated

> and rejected as well as notification that the borrower was not evaluated on other criteria.

40. In the application denial, Selene provided that Ms. Laspina was denied because she had "excessive obligations in relation to…income".

41. However, Selene did not calculate the income used in good faith because it failed to include verifiable contribution income into its calculation.

42. The contributor income was derived by including Ms. Laspina's parents' income specifically social security income and pension income.

43. Selene's failure to account for such income at all or to indicate that there was a valid reason why such income was not considered, renders the determination that her income is insufficient factually incorrect and thus invalidates the reason given for the denial.

44. Therefore, Selene grossly misrepresented Ms. Laspina's actual verified income so as to cause her income to fall outside of the Standard Modification guidelines when evaluating her for a loan modification

45. Selene's improper denial of the plaintiff's application initiated a course of events, which Selene had ample opportunities to correct yet failed to do so, which had the effect of permanently depriving the plaintiff from qualifying for any modification under the Standard Modification guidelines.

46. Selene's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the plaintiff's rights.

47. As a result of Selene's actions, Selene is liable to the plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT TWO: VIOLATION OF 12 C.F.R. §1024.36 (h)**

**(Wrongfully failing to consider Ms. Laspina's appeal deeming it late when the appeal was only late due to Selene's own failure to send its denial letter to the correct address)**

48.     The plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs in their entirety, as if set forth more fully herein.

49.     Selene originally sent its denial letter to 8B Commercial Street, Hicksville New York, 11801, the old address for Plaintiff's counsel's office on March 14, 2017. See plaintiff's **Exhibit "D"**.

50.     Selene admits in its May 11, 2017 letter that it mailed the denial letter to the wrong address and that upon finding the right address on March 29, 2017 it mailed the denial letter without changing the date that the appeal was due despite having notice that the denial letter was sent to the wrong address.

51.     An appeal was provided, yet, Selene did not consider the appeal based upon its lateness and based upon the fact that no additional documentation was provided, although an appeal does not require additional documentation. Considering that an appeal does not require additional documents, when Selene did not indicate that missing documents were the basis for not including the contributor income which would be incorrect anyway since social security award letters and letters from Ms. Laspina's parents' pension funds were also previously provided.

52. 12 C.F.R. §1024.41 states in relevant part that:

Appeal process.

APPEAL PROCESS REQUIRED FOR LOAN MODIFICATION DENIALS.

If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.

DEADLINES.

A servicer shall permit a borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to paragraph (c)(1)(ii) of this section.

53. Thus, by failing to review the appeal for any valid reason, defendant has also breached its duty to follow the regulations pertaining to the appeal process.

54. As a direct and proximate cause of plaintiff's unlawful refusal to review the appeal, plaintiff may sue the defendant and recover actual damages.

55. As a result of Selene's actions, Selene is liable to Ms. Laspina for actual damages, statutory damages, costs, and attorney's fees.

56. Ms. Laspina sustained actual damages in the form of increased bankruptcy costs, fees, loan modification fees and attorney's fees to bring the instant adversarial proceeding which would not have been necessary, but for, Selene's fraudulent, tortious and negligent actions by wrongfully denying Ms. Laspina's application and for increased fees, costs and interest which have been added to Ms. Laspina's mortgage loan.

## COUNT THREE: VIOLATION OF 12 C.F.R. §1024.35 (e)(3)(i)(C)

### (Wrongfully failing to provide a timely response to plaintiff's Notice of Error)

57. The plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs in their entirety, as if set forth more fully herein.

58. 12 C.F.R. §1024.35 (e)(3) (i) (C) provides:

"**TIME LIMITS.**

In general. A servicer must comply with the requirements of paragraph (e)(1) of this section:

B. Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

C. For all other asserted errors, not later than **30 days** (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error."

59. On March 2, 2017, a Notice of Error from Ms. Laspina, by her counsel, was sent to Selene via certified mail R.R.R. pursuant to 12 C.F.R §1024.35 of Regulation X specifying error that were made in servicing plaintiff's mortgage loan. *See* **Plaintiff's Exhibit "B"**.

60. On March 9, 2017, Selene received the Notice of Error which was confirmed by Selene in its response to Ms. Laspina's Notice of Error which was dated May 11, 2017. *See* **Plaintiff's Exhibit "C"**.

61. Pursuant to 12 C.F.R. §1024.35(e)(3)(i)(C), Selene was required to send a response to the Notice of Error by no later than April 20, 2017.

62. Selene did not send its response until May 11, 2017, 15 days after a response was due and no request for an extension of time to respond to the Notice of Error was requested.

63.     As a result of Selene's failure to timely respond to Ms. Laspina's Notice of Error, Selene violated 12 C.F.R. §1024.35(e)(3)(i)(C) for failing to respond within the required thirty (30) day period.

64.     As a result of Selene's actions, Selene is liable to Ms. Laspina for actual damages, statutory damages, costs, and attorney's fees.

65.     Ms. Laspina sustained actual damages in the form of increased bankruptcy costs, fees, loan modification fees and attorney's fees to bring the instant adversarial proceeding which would not have been necessary, but for, Selene's fraudulent, tortious and negligent actions by wrongfully denying Ms. Laspina's application and for increased fees, costs and interest which have been added to Ms. Laspina's mortgage loan.

**COUNT FOUR: VIOLATION OF THIS HONORABLE COURT'S LOSS MITIGATION ORDER**
**(Failure to follow this Honorable Court's Loss Mitigation Order which orders the Parties to act in Good Faith)**

66.     This Honorable Court issued a loss mitigation order on June 11, 2017 which provides in Article VII of the order entitled "Duties Upon Commencement of Loss Mitigation" paragraph "A" that:

> "The Loss Mitigation Parties shall negotiate in Good Faith. A party that does not participate in the Loss Mitigation Program in good faith may be subject to sanctions."

67.     Despite repeatedly attempting to discover a valid basis for Selene's denial and its failure to acknowledge valid and confirmable contributor income Selene refuses to respond adequately to the Notices of Error nor does it recognize its error.

68. Black's law dictionary defines Good Faith as:

> "Sometimes legally binding due diligence around the effort made, **information given**, or transaction done, honestly, objectively**, with no deliberate intent to defraud the other party**." (*Emphasis Added*).

69. Although required to supply a response to the Notice of Error in accordance with Regulation X, pursuant to 12 C.F.R. 1024.35 (a), Selene has failed to provide any basis for which it excluded valid income in its determination that Ms. Laspina's has "excessive obligations in relation to…income".

70. However, if Selene is to be believed and the 10%-55% range required by Ms. Laspina's to qualify for the loan modification would be met.

71. Using Selene's own numbers Ms. Laspina's own income is **$8,389.89 + contribution income $3,054.00 (which Selene ignored) = $11,443.89 - $4,658.68 (total liabilities) = 40% Debt to Income**, or in other words income that would qualify Ms. Laspina for a loan modification in accordance with Selene's stated guidelines.

72. Selene's incessant failure to address the contributor income demonstrates that first Selene has abrogated its obligation to comply with RESPA and Regulation X although required to by law but also demonstrates that Selene has not acted in good faith in attempting to participate in this Honorable Court's loss mitigation program by 1. Either providing a false reason for denial or 2. Providing a reason for denial which is inconsistent with the mathematical calculations that clearly demonstrate Selene's error in evaluating Ms. Laspina's application in accordance with Selene's program parameters as with the contributor's income Ms. Laspina's debt to income ration and her gross household income fall within the stated range of 10%-55% as is required to offer a loan modification.

73. As a result of Selene's willful disregard for this Court's Order and of Regulation X, Plaintiff has sustained actual damages and been permanently precluded from obtaining a Standard Modification.

74. As such, Selene should be sanctioned for their acts of bad faith in violation of this Honorable Court's Order.

## COUNT FIVE: VIOLATION OF GENERAL BUSINESS LAW §349
### (Deceptive Acts and Practices Unlawful)

75. The plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs in their entirety, as if set forth more fully herein.

76. Ms. Laspina is a "consumer" as that term is defined in the General Business Law § 349 of New York.

77. Ms. Laspina's relationship with Selene arose out of a "consumer debt" as that term is defined in the General Business Law (hereinafter "GBL") of New York.

78. Selene is a "debt collector" as that term is defined by the applicable provisions of the General Business Law of New York.

79. A "debt collector" is subject to the consumer protection laws which were enacted in New York State.

80. Specifically, Selene is liable to Ms. Laspina pursuant to GBL §349 which states in relevant part that:

"Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

81. Selene, in violation of RESPA provided, deceptively denied Ms. Laspina for a loan modification based upon the fact that it has never provided an explanation as to why contributor income was not considered in Selene's evaluation and calculations, which if considered would account for a gross monthly income that falls within the 10%-55% range

82. As a result of its willful and wrongful violations, the amount owed by Ms. Laspina to Selene is higher because of the deceptive and willful violation of Regulation X which also constitute a violation of GBL §349.

83. Plaintiff has suffered both pecuniary and non-pecuniary actual damages in the form of attorney fees, court filing fees, interest and late fees deceptively added to the mortgage balance.

84. As a result of Selene's willful and deceptive actions, Selene has violated GBL § 349 and is liable to Ms. Laspina for actual damages, statutory damages, punitive damages, costs, and attorney's fees.

## JURY DEMAND

85. Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff, Janet Laspina, prays that this Court enter its order granting judgment in their favor for the following:

A.) For actual damages in an amount to be determined at trial as to Count One through Count Five;

B.)     For costs, and reasonable attorneys' fees;

C.)     For statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each and every count contained in Count One, Count Two, Count Three, and Count Four;

D.)     For punitive damages, as to each and every count contained in Count One, Count Two, Count Three, Count Four, Count Five;

E.)     For sanctions against Selene for acting in bad faith in violation of this Honorable Court's Order;

F.)     Such other relief which this Court may deem appropriate.

                                                                                Respectfully submitted,

                                                          /s/ Darren Aronow
                                                          Darren Aronow
                                                          Aronow Law P.C.
                                                          20 Crossways Park Drive, North, Suite 210
                                                          Woodbury, New York 11797
                                                          Tel. (516) 762-6700
                                                          Fax (516)303-0066

                                                          *Counsel for Plaintiff*

TO:
Selene Finance LP
9990 Richmond Avenue, suite 400
Houston, TX 77042

Selene Finance LP
c/o CT Corporation System
111 Eighth Avenue
New York, New York 10011